Shawn Khorrami (SBN 180411)
  skhorrami@khorrami.com
Robert J. Drexler, Jr. (SBN 119119)
  rdrexler@khorrami.com
Bevin E. Allen (SBN 221936)
  ballen@khorrami.com
444 South Flower Street, 33rd floor
Los Angeles, CA 90071
Telephone:   (213) 596-6000
Facsimile:    (213) 596-6010

John N. Quisenberry, SBN 94751
  jquisenberry@quislaw.com
**THE QUISENBERRY LAW FIRM**
10472 Lindbrook Drive
Los Angeles, CA 90024
Phone:  (310) 415-7600
Fax:      (310) 474-7008

Attorneys for Plaintiffs
DANIEL SEPULVEDA, ANITA PEREZ,
AND ANTONIO PRANGNER

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Sepulveda, Anita Perez, and Antonio Prangner,<br><br>              Plaintiffs,<br><br>    v.<br><br>Wal-Mart Stores, Inc., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No. CV 04-1003 DSF (Ex)<br><br>Assigned to the Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AN AUTHORITIES IN OPPOSITION TO DEFENDANT WAL-MART, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: January 14, 2004<br><br>Motion Date: November 19, 2012<br>Motion Time: 1:30 pm<br>Courtroom:  840<br><br>Trial: March 5, 2013 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION……………………………………………………1

II.   STATEMENT OF FACTS…………………………………………..2

      A.    Wal-Mart's Corporate Structure………………………………2

      B.    Wal-Mart's Control Over the Stores…………………………..3

      C.    Wal-Mart's "Expectations" of Plaintiffs……………………….4

      D.    Plaintiffs' Did Not Have the Ability to Hire, Fire or Promote……..…5

      E.    Plaintiffs Were Not Primarily Engaged in Non-Exempt Tasks……….6

III.  ARGUMENT…………………………………………………….....7

      A.    Defendant Has Not Met the Burden of Establishing that
            Plaintiffs are Properly Classified as Exempt Executive
            Employees………………………………………………..7

            1.  Wal-Mart Failed to Demonstrate an Absence of Material
                Fact that Plaintiffs' Duties Involved the Management of the
                Enterprise or of a Customarily Recognized Department………….9

            2.  Plaintiffs Had No Authority to Hire or Fire, and Any
                Recommendations Made Were Not Given Particular
                Weight………………………………………………………10

            3.  Plaintiffs Did Not Customarily or Regularly Exercise
                Discretion and Independent Judgment…………………………...12

            4.  Genuine Issues of Fact Exist as to Whether Plaintiffs
                Were Primarily Engaged in Management Duties………………...15

                i.    Plaintiffs Spent the Majority of their Time on
                      Non-Exempt Tasks………………………………………...16

                ii.   Genuine Issues of Fact Exist as to Whether Plaintiffs'
                      Non-Exempt Tasks Were Closely Related to Their
                      Exempt Work …………………………………………...21

                iii.  Wal-Mart Expected Its Assistant Managers to be
                      Primarily Engaged in Non-Exempt Work ………………22

B. Plaintiffs Were Not Exempt Administrative Employees……………26

    1. Plaintiffs Did Not Perform Office or Non-Manual Work Directly Related to Wal-Mart's General Business Operations……………………………………………26

    2. Plaintiffs Were Not Primarily Engaged in Exempt Administrative Duties……………………………………………28

C. The Combination Exemption Does Not Save Defendant……………29

D. Meal and Rest Break Claims Prevail………………………………...30

E. Triable Issues of Fact Exist as to Plaintiffs' Wage Statement Claim………………………………………………………...32

F. California Law Expressly Permits Restitutionary Recovery of Unpaid Wages………………………………………………………..34

G. Plaintiffs' Waiting Time Penalty Claims Prevail……………………34

IV. CONCLUSION……………………………………………………………..35

1
2

# <u>TABLE OF AUTHORITIES</u>

3

## <u>Cases</u>

4

*Amaral v. Cintas Corp. No 2,*

5

163 Cal.App.4th 1157 (2008)…………………………………………………….34

6

*Anderson v. Dolgencorp.,*

7

2011 U.S. Dist. LEXIS 49658, (N.D. N.Y. 2011)………………………22, 26

8

*Anderson v. Liberty Lobby, Inc.,*

9

477 U.S. 242 (1986)………………………………………………...7, 17

10

*Barnhill v. Robert Saunders & Co*.,

11

125 Cal.App.3d (1981)……………………………………………………...34

12

*Brinker Rest. Corp. v. Super. Ct.*,

13

53 Cal.4th 1004 (2012) …………………………………………………...30

14

*Burger v. Wal-Mart Stores, Inc.,*

15

Case No. 13-29594……………………………………………………….21

16

*Campanelli v. Hershey Company,*

17

765 F.Supp.2d 1185 (N.D. Cal. 2011)…………………………………28, 29

18

*Celotex Corp. v. Catrett,*

19

47 U.S. 317 (1986) …………………………………………...………..7, 17

20

*Cortez v. Purolator Air Filtration Prods. Co.,*

21

23 Cal.4th 163 (2000)……………………………………………………34

22

*Davis v. Morris,*

23

37 Cal.App.2d 269 (1940)………………………………………………..34

24

*Donovan v. Burger King Corp.,*

25

675 F.2d 516 (1st Cir. 1982)…………….……………………………15

26

*Eicher v. Advanced Business Integrators, Inc.,*

27

151 Cal.App.4th 1363(2007)…………………………………………..8, 28

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Cases Con't.

*Ellis v. United Parcel Service, Inc.,*

    2012 WL 2356630 (Cal. Ct. App. 2012)……………………………………..21, 22

*Gomez v. Lincare, Inc.,*

    173 Cal.App.4th 508 (2009)…………………………………………………7

*Grace v. Family Dollar Stores, Inc.,*

    637 F.3d 508 (4th Cir. 2011)………………………………………………..22

*Greko v. Diesel USA, Inc.,*

    277 F.R.D. 419 (N.D. Cal. 2011) ………………………………16, 20, 22, 27

*Harris v. Superior Court,*

    207 Cal.App.4th 1225 (2012)……………………………………………….27

*Hill v. R+L Carriers, Inc.,*

    690 F.Supp.2d 1001 (N.D. Cal. 2010) ………………………………12, 15

*Jaimez v. Daiohs USA, Inc.,*

    181 Cal.App.4th 1286 (2010)………………………………………...30, 33

*Kisliuk v. ADT Security Services,*

    263 F.R.D. 544 (C.D. Cal. 2008)…………………………………………..33-34

*Loehr v. Ventura County Cmty. Coll. Dist.,*

    147 Cal.App.3d 1071 (1983)…………………………………………..34

*Lopez v. United Parcel Service, Inc.,*

    2010 U.S. Dist. LEXIS 26072 (N.D. Cal. 2010)……………………12, 33, 34

*Martin v. Cooper Electric Supply Co.,*

    940 F.2d 896 (3d Cir. 1991)………………………………………………...27

*McKenzie v. Fed. Express Corp.,*

    275 F.R.D. 290 (C.D. Cal. 2011)…………………………………….......33

*Morgan v Family Dollar,*

    551 F.3d 1233 (11th Cir. 2008)……………………………………14, 15

**Cases Con't.**

*Morgan v. United Retail Inc.*, ……………………………………………32-33

    186 Cal. App. 4th 1136 (2010),

*Morillion v. Royal Packing Co.*

    22 Cal.4th 575 (2000)……………………………………………………..8

*Murphy v. Kenneth Cole Productions, Inc.*,

    40 Cal. 4th 1094 (Cal. 2007)…………………………………………..34

*Musgraves v. Sears Holding Management Corp., et al.,*

    2012 U.S. Dist. LEXIS 113989 (C.D. Cal. 2012)………………………21, 22

*Nordquist v. McGraw-Hill Broadcasting Co.,*

    32 Cal.App.4th 555 (1995)……………………………………………..8, 12

*Petersen v. The Cleveland Institute of Art,*

    2011 U.S. Dist. LEXIS 41578 (N.D. Ohio 2011)…………………………..11

*Plaunt v. Dolgencorp, Inc.*

    2010 U.S. Dist. LEXIS 132135 (M.D. Pa. 2010) ………………………13, 15

*Ramirez v. Yosemite Water Co., Inc.,*

    20 Cal.4th 785 (1999)………………………………………...1, 7, 15, 16, 23, 24

*Ricaldi v. US Investigations Services, LLC,*

    2012 U.S. Dist. LEXIS 73279 (C.D. Cal. 2012)…………………………….30

*Rieve  v. Coventry Health Care, Inc.*, 2012 U.S. Dist. LEXIS 58603,

    (C.D. Cal. Apr. 25, 2012) …………………………………………….33

*Sav-On Drug Stores, Inc. v. Superior Court*,

    34 Cal. 4th 319 (2004)………………………………………………..8, 17

*Taylor v. United Parcel Service, Inc.,*

    190 Cal.App.4th 1001 (2010) ………………………………...8, 12, 16

*Thomas v. Ponder,*

    611 F.3d 1144 (9th Cir. 2010)………………………………………………21

**<u>Cases Con't.</u>**

*Tidewater Marine Western, Inc. v. Bradshaw,*

    14 Cal.4th 557 (1996)…………………………………………………………………..8

*Wang v. Chinese Daily News, Inc.,*

    435 F. Supp. 2d 1042 (C.D. Cal. 2006) …………………………………….33

*Ward v. Family Dollar Stores, Inc.,*

    2011 U.S. Dist. LEXIS 129969 (W.D. N.C. 2011)…………………………22

*Williamson v. Cook Composites and Polymers Co.,*

    2009 U.S. Dist. LEXIS 120457 (C.D. Cal. 2009)………..……………….25

**<u>Statutes</u>**

Cal. Bus. & Prof. Code §17200……………………………………………………34

8 Cal. Code Regs. §11070(1)(A)(1) ……………………………………………..8

8 Cal. Code Regs. §11070(1)(A)(1)(a) …………………………………………..9

8 Cal. Code Regs. §11070(1)(A)(1)(c) ……………………………...……………10

8 Cal. Code Regs. §11070(1)(A)(2) ……………………………….……………26

*8 Cal. Code Regs.* §11070( 2)(K) …………………………..……………………..15

8 Cal. Code Regs. § 13520   …………………………………..………………….35

Cal. Lab. Code. §203……………………………………………….………………34

Cal. Lab. Code 226(e) ………………………………………………………34

Cal. Lab. Code §501(a) …………………………………………………….……….7

Cal. Lab. Code §515(e) ………………………………………………………1, 15

Cal. Lab. Code §1173……………………………………………...…………………8

29 C.F.R. 541.102(b)(2001)……………………………………….………………16

29 C.F.R. §541.104(a)(2001)……………………………………………………….9

29 C.F.R. §541.105(2001)……………………………………………...……………10

29 C.F. R. §541.105 (2004) …………………………………...…………………10

29 C.F.R. §541.106(2001)……………………………………………………………10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**Statutes Con't.**</u>

29 C.F.R. § 541.107(2001)……………………………………………………..12

29 C.F.R. §541.108(2001)………………………………………………………..24

29 C.F.R. §541.108(b)(2001)………………………………..…………………..18, 21

29 C.F.R. §541.108 (c)(2001)…………………………………………………...16

29 C.F.R. §541.108(e)(2001)……………………………………………16, 19, 21

29 C.F.R. §541.109(c)(2001)………………….………………………19, 21, 23

29 C.F.R. §541.111(b)(2001)……………………………………………………..16

29 C.F.R. §541.115(b)(2001)…………………………………………………….21

29 C.F.R. §541.115(c)(3)(2001)……………………….…………………..18, 21

29 C.F.R. §541.203(a)(2001)……………………………………………………27

29 C.F.R. §541.203(b)(2001)……………………………………………………27

29 C.F.R. §541.205(a)(2001)……………………………………………………27

29 C.F.R. §§541.205(c)(1)(2001)……………………….………………………28

29 C.F.R. § 541.207(a)(2001)……………………………………………………12

29 C.F.R. § 541.207(a)(2001)……………………………………………………12

29 C.F.R. § 541.207(g)(2001)…………………………..………………………12

29 C.F.R.§ 541.208(f)(2001)……………………………………………………..14

<u>**Rules**</u>

Cal. Rule Court 8.1115(a)……………….…………………………………21

Fed.R.Civ.Proc. 56(a)…………………..…………………………………..7

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

## I.    INTRODUCTION

Defendant Wal-Mart Stores, Inc.'s ("Defendant" or "Wal-Mart") Motion for Summary Judgment irrefutably fails to meet its burden of demonstrating that there is an absence of genuine fact.  Wal-Mart's primary argument is that Plaintiffs Daniel Sepulveda, Antonio Prangner and Anita Perez (collectively "Plaintiffs") were each properly classified as exempt employees under the executive and administrative exemptions recognized under California law.  Although, Wal-Mart bears the burden of proving that the exemptions apply, Defendant's Motion is woefully devoid of evidence sufficient to meet this burden.

For either the executive or administrative exemption to apply, Defendant must prove that each and every prong of the exemption is met.  Under each of these exemptions, Defendant must prove that Plaintiffs were primarily engaged in job duties that are deemed exempt under the tests for the exemption.  The phrase "primarily engaged" means "more than one-half of the employee's worktime" is spent performing duties that qualify as exempt.  *Lab.Code* §515(e). California law is clear – in order to demonstrate that Plaintiffs were primarily engaged in exempt tasks, Defendant must quantify the amount of time Plaintiffs spent on exempt versus non-exempt tasks.  *Ramirez v. Yosemite Water Co., Inc.,* 20 Cal.4th 785, 802 (1999).  Defendant, however, makes no effort whatsoever to quantify the amount of time Plaintiffs spent on any of their job duties, let alone demonstrate that they spent over 50% of their time on exempt tasks.  Instead, Defendant provides a list of tasks it contends are exempt and concludes that Plaintiffs could not have spent less than 50% of their time on these tasks.  Defendant's failure to meet its burden requires that its motion be denied.  Furthermore, Plaintiffs' evidence demonstrates that they spent the majority of their time on non-exempt tasks.  Perez and Sepulveda spent at least 75% of their time on non-exempt tasks, Prangner 70%.  As Plaintiffs' evidence is the *only* evidence in the evidentiary record regarding the amount of time spent on these duties, Defendant's motion must be denied.

1    Recognizing that it failed to meet its burden as to whether Plaintiffs were

2    "primarily engaged" in exempt tasks, Defendant argues that it may avail itself of

3    the exemption because Plaintiffs failed to meet Wal-Mart's expectations in

4    performing primarily non-exempt duties.  Defendant's argument fails, however, as

5    Plaintiffs were not only performing non-exempt duties in compliance with Wal-

6    Mart's expectations, they were following explicit directives from their supervisors.

7    Moreover, Wal-mart submits no evidence of expressions of displeasure about

8    Plaintiffs doing hourly work. Instead, they were routinely observed by their store

9    managers performing non-exempt tasks and praised for doing so.

10    Defendant also fails to meet its burden of showing an absence of material

11    fact with regard to whether Plaintiffs were able to exercise discretion and

12    independent judgment.  Plaintiffs did not have the opportunity to weigh multiple

13    courses of conduct as Wal-Mart's Home Office controlled every aspect of their jobs

14    because the job duties Plaintiffs performed were either dictated by strict company

15    policies and guidelines leaving no room for independent judgment, or required a

16    superior's approval leaving no room for discretion. Home Office dictated through

17    modulars exactly how the store should be set up with programs like "Just Like the

18    Picture" requiring that product displays mimic the pictures sent from the Home

19    Office exactly.  Based on Defendant's failure to meet each of the requirements of

20    the exemptions, Defendant's motion must be denied.

21    **II.    STATEMENT OF FACTS**

22    **A.    Wal-Mart's Corporate Structure**

23    Wal-Mart's corporate office, the "Home Office", is in Bentonville, Arkansas.

24    SGD 287.  Every Wal-Mart store is assigned to a large "division," a smaller

25    "region" in the division, and then to a "district" comprised of six to ten stores.

26    SGD 288. Under division management, every region has regional managers based

27    out of the Home Office.  SGD 289.  Away from the Home Office, every district has

28    a District Manager ("DM").  SGD 290.  Under the DMs, every store has one Store

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

Manager ("SM").  SGD 291.  Under the SMs, some stores have one or two Co-Managers ("CoMs").  Id.  Under the SMs (and CoMs, if any), every store has six to twelve Assistant Managers ("AMs").  SGD292.  The SMs and CoMs are responsible for the entire store.  SGD 293.  Every AM is assigned to work in one area of the store at a time (i.e., front end, softlines, etc.,)  SGD 3.  The AMs are the lowest level considered "management," and the lowest level salaried employees.  SGD 7.

### B.     Wal-Mart's Control Over the Stores

The level of control exercised by the Home Office is staggering. Wal-Mart manages its stores centrally from the Home Office through a large set of uniform policies and operating procedures, constantly monitoring its employees' daily work. AMs perform their work in stores whose physical layout is standardized by the Home Office. SGD 12.  The AMs do not decide what merchandise is sold in Wal-Mart stores, rather, the Home Office makes that decision, and only Home Office-approved merchandise may be sold in stores.  SGD 13, 15, 17-19, 335.  Similarly, AMs do not decide where to display merchandise.  Id. The Home Office issues "modulars" (or detailed plans covering at least 75% of the display spaces which direct which merchandise must be displayed where) to every store.  Id. The modulars are highly detailed, specifying the exact height of the shelves, the location of pegs, and the number of items of each product on each shelf or peg.  SGD 294. The Home Office sets a mandatory completion date for every modular.  SGD 295. Every sign in the store, from large banners to small "bean flips" with prices of individual items, is set according to Home Office directions.  SGD 296.

The Home Office sets the base prices for all merchandise.  SGD 14, 253, 255, 264, 335.  To account for local competitors, the Home Office mandates a price change based on fixed procedures, but AMs could not change prices on their own. SGD 253, 264, 297.  Seasonal sales, price reductions, and weekly and special-event sales are all dictated by the Home Office.  SGD 298.  As such, Plaintiffs' job duties merely consisted of the physical labor required to execute the Home Office's

1  directives   Centralized control permeates all aspects of the AMs' work.  SGD 299.

2  Even the physical environment in Wal-Mart stores is centrally controlled by the

3  Home Office, such as temperature, lighting level, and music volume level.  Id.  If

4  an SM wants the temperature adjusted, or even needs light bulbs changed, s/he

5  must call the Home Office.  Id.

6         **C.**    **Wal-Mart's "Expectations" of Plaintiffs**

7        Each Plaintiff testified that Wal-Mart's job descriptions did not accurately

8  reflect the work AMs actually performed.  SGD 6.  A more accurate portrayal of a

9  SM's expectations of the AMs' duties was provided by the SM in the Tracy,

10  California, store, where all three Plaintiffs worked as AMs.  SGD 43, 130, 207, 306.

11  That SM's "Assistant Manager Expectations" specifically required closing AMs to

12  work "until midnight or until the store is ready for the next days [sic] business …

13  including softlines, no shopping carts, a clean courtesy desk…no baskets behind

14  register 17, parking lot free of carts & trash[.]"  SGD 307. The SM further

15  mandated that there be "no freight left on sales floor[,]" "lounge clean at all times,

16  hallway clear all the way to receiving…clean bathrooms and management office

17  kept clean."  SGD 308. Moreover, "[i]f you are overstocked in one of your areas it

18  is your responsibility to fix it."  SGD 309. "You are responsible for walking your

19  outs personally on Mondays for consumable departments…and all other

20  departments on Tuesday by 11:00 a.m."  Id.

21        Finally, Wal-Mart evaluated Plaintiffs on their non-exempt work.  Sepulveda

22  was commended for his "[g]reat customer service skills, always willing to go out of

23  his way to help customer.  Great average sales per customer, and good customer

24  counts.  Good cashier[.]"  SGD 331.  He was later critiqued on whether he

25  adequately cleaned his store.  SGD 332.  Indeed, Sepulveda testified that his store

26  managers told him directly to perform non-exempt tasks on a regular basis.  SGD

27  92, 111.  Similarly, Prangner was commended for his "suports [sic] the cashiers

28  front end" and was chastised because his sales per transaction was too low.  SGD

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

358.  Perez was also commended for taking "good care of her customer's needs" but was critiqued on her average sales per transaction scan features.  SGD 342, 344. Sepulveda testified that AMs were told to be on the registers during busier periods, and even scheduled assistant managers to work for hours at the registers.  SGD 314. Expectations to keep the store clean required that Plaintiffs perform manual labor rather than non-exempt tasks.  SGD 51, 61, 152, 154, 231, 308, 333.

The largest controllable expense at Wal-Mart is its labor costs. SGD300. In order to meet its low-cost business strategy, labor costs were strictly limited and constantly tracked.  Wal-Mart's restrictions on the stores' labor budgets ensured that its AMs performed non-managerial tasks.  For example, when hourly employees were sent home to reduce weekly payroll, the SM's expectations still had to be met and the non-managerial tasks fell to the AMs.  SGD 315.  In fact, Plaintiffs were informed that any overtime worked by hourly employees would result in negative evaluations.  SGD 338.  Plaintiffs complained to their SMs and DMs about the lack of necessary staffing, and even informed them that they were spending multiple hours each day working the cash registers and putting returned merchandise away.  SGD 337.  As a result, Wal-Mart cannot contend that its realistic expectations were that AMs would not perform non-exempt tasks despite the fact that they consistently limited the time hourly associates could work.

**D.    Plaintiffs' Did Not Have the Ability to Hire, Fire or Promote**

Plaintiffs did not have the ability to hire employees.  Sepulveda testified that he had no authority to hire employees or set their starting pay.  SGD 80-82.  Perez testified that only SMs could hire and fire associates.  SGD 170. Indeed, even Wal-Mart's characterization of Perez's ability to make conditional offers of employment" is misplaced as Perez only did so after the SM had decided to hire the applicant.  SGD 356.  Finally, while Prangner was involved in interviewing employees, he only made hiring recommendations to his SM, and those recommendations were rarely followed.  SGD 236-238.  Plaintiffs' testimony also

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1    reveals that they did not have any authority to approve merit increases, transfers

2    from one store to another, or changes in status from part time to full time, but were

3    merely "conduits" between the associate and the SM.  SGD 8, 77-80, 172, 173, 247.

4           Plaintiffs did not have the ability to fire employees.  SGD 85, 88, 170, 365.

5    Prangner and Sepulveda testified that they did not have the authority to fire

6    employees, only the SMs and DMs did.  SGD 85, 86, 365.  Perez testified that she

7    only had the ability to fire employees directly when she was the overnight manager,

8    and only in the case of absenteeism.  SGD 184.  Moreover, if Plaintiffs gave any

9    recommendations as to the hiring, firing or change in employment status of any

10   applicant or employee, their recommendations were given little weight.  Sepulveda

11   testified that his recommendations were ignored on numerous occasions.  SGD 82.

12   Prangner testified that most of his recommendations were not followed.  DP 238.

13          **E.     Plaintiffs Were Not Primarily Engaged in Non-Exempt Tasks**

14          Plaintiffs Sepulveda and Prangner testified that they spent 70% to 75% of

15   their time on non-exempt tasks.  SGD 315-317.  In addition, Sepulveda testified

16   that he cleaned, stocked shelves, worked on the cash registers for a minimum of

17   10% of each day, performed manual labor in setting up modular displays, returned

18   merchandise to the shelves from the store and returns from customers, drove to

19   offsite warehouses to retrieve product, provided customer service, answered

20   phones, and carried items for customers.  SGD 27, 38, 39, 92, 329, 333, 334, 336.

21   Prangner testified that he cleaned the store, covered for associates who were

22   attending training, stocked shelves, moved freight, worked on the cash registers for

23   up to three hours a day, performed customer service, and manual labor.  SGD 13,

24   39, 231, 259, 262, 268, 357.  Perez testified that when she was an overnight

25   manager, she spent almost all of her time "doing freight", i.e. stocking the shelves,

26   and as a daytime manager, she spent at least half of her day on the cash register.

27   SGD 152.  In all, Perez testified that she spent no more than 25% of her time

28   performing exempt tasks.  SGD 350.  Perez operated cash registers (at the Tracy

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1   store sometimes a few hours each day for weeks at a time), cleaned, moved freight,
2   stocked shelves, returned merchandise to the shelves, and performed customer
3   service.  DF 4, 39, 142, 150, 152, 165, 194, 347-349.

4   **III.   ARGUMENT**

5       Summary judgment on all or part of a claim or defense is appropriate only if
6   no genuine dispute of material fact exists and the moving party is entitled to
7   judgment as a matter of law.  F.R.C.P. 56(a).  The moving party bears the initial
8   burden of demonstrating the absence of a genuine issue of material fact for trial.
9   *Celotex Corp. v. Catrett,* 47 U.S. 317, 323 (1986).  If the moving party meets this
10  initial burden, the burden then shifts to the non-moving party to set out specific
11  facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the facts
12  and draw inferences in the manner most favorable to the non-moving party.
13  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  "Credibility
14  determinations, the weighing of the evidence, and the drawing of legitimate
15  inferences from the facts are jury functions, not those of a judge … ruling on a
16  motion for summary judgment."  *Id.*

17      Under California law, an employee is presumptively entitled to overtime
18  compensation for all hours worked in excess of eight hours per day or forty hours
19  per week.  *Cal.Lab.Code §501(a).*  An employer who claims that an employee is
20  exempt from overtime compensation bears the burden of proving as an affirmative
21  defense that the exemption applies.  *Gomez v. Lincare, Inc.,* 173 Cal.App.4th 508,
22  516 (2009).   California law further mandates that exemptions from statutory
23  mandatory overtime provisions be narrowly construed, with an eye towards the
24  protection and benefit of the employees.  *Ramirez,* 20 Cal.4th at 794.

25      **A. Defendant Has Not Met the Burden of Establishing that Plaintiffs
26          are Properly Classified as Exempt Executive Employees**

27      Under California's labor laws, in order for Wal-Mart to avail itself of the
28  executive exemption, it must demonstrate that Plaintiffs: (1) had duties and

responsibilities that involved the management of the enterprise or of a customarily recognized department or subdivision thereof; (2) customarily and regularly directed the work of two or more other employees therein; (3) had the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were given particular weight; (4) customarily and regularly exercised discretion and independent judgment; (5) were primarily engaged in duties which meet the test of the exemption; **and** (6) earned a monthly salary of at least two times the state minimum wage. *8 Cal Code Regs.* §11070(1)(A)(1).[1]  Because the exemption uses conjunctive language, Wal-Mart has the burden to establish *each* of these elements. *Eicher v. Advanced Business Integrators, Inc.,* 151 Cal.App.4th 1363, 1372 (2007).  Failure to meet just one requirement defeats the exemption. Moreover, whether an employee satisfies the elements of the exemption is a question of fact. *Nordquist v. McGraw-Hill Broadcasting Co.,* 32 Cal.App.4th 555, 561 (1995).  "[T]ask classification is a mixed question of law and fact appropriate for a court to address separately from calculating the amount of time specific employees actually spend on their tasks. *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 330 (2004) (citing *Ramirez,* 20 Cal.4th at 794).

In addition, "federal law does not control unless it is more beneficial to employees than the state law." *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 584 (2000).  California law provides broader protection of employee rights in many instances, and therefore controls. *Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal.4th 557, 567 (1996).  Thus, this court may only look to "[f]ederal law interpreting *similar components* of the FLSA exemptions" as persuasive authority. *Taylor v. United Parcel Service, Inc.,* 190 Cal.App.4th 1001, 1015 (2010)

---

[1] Under the broad mandate to regulate the working conditions of employees afforded it under California Labor Code §1173, the Industrial Welfare Commission ("IWC") promulgated 17 wage orders applying to distinct groups of employees. No. 7-2001 is applicable to this action and codified at 8 Cal Code Reg. §11070.

(California's "primarily engaged" element is more exacting than the federal "primary duty" element).  Moreover, Wage Order 7-2001 mandates that the court "may only properly consider federal decisions interpreting the FLSA and the federal Department of Labor's implementing regulations as set forth in the Code of Federal Regulations that were in effect as of January 1, 2001 (prior to the 2004 amendments to the federal provisions)."  *Id.* [2] Wal-Mart's Motion must be denied as genuine issues of material fact as to five of the six elements of the executive exemption.[3]

### 5.  Wal-Mart Failed to Demonstrate an Absence of Material Fact that Plaintiffs' Duties Involved the Management of the Enterprise or of a Customarily Recognized Department

In order to avail itself of this defense, Wal-Mart must prove that Plaintiffs' "duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof."  8 Cal. Code Regs. §11070(1)(A)(1)(a)[4]. "In order to properly classify an individual as an executive he must be more than merely a supervisor of two or more employees; *nor is it sufficient that he merely participates in the management of the unit*." C.F.R. §541.104(a) (emphasis added).  Here, the evidence shows that Plaintiffs are only participants in a broad team of managers, all of whom are responsible for managing the store.  SGD 100.  Indeed, even hourly employees are responsible for managing aspects of the store.  SGD 101, 103, 104.  Sepulveda testified that his primary duty was sales and keeping the store stocked, not management.  SGD 65.  Moreover, at times, there were multiple managers on duty in the same position as Plaintiffs supervising the same employees.  SGD 137.

---

[2] All references to the Federal Code of Regulations refer to Title 29, and to the regulations in effect as of January 1, 2001, unless otherwise indicated.
[3] Plaintiffs do not dispute that they met the minimum salary requirements for the exemption to apply.
[4] All references to California's Code of Regulations are to Title 8, unless otherwise indicated.

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-MART'S

Thus, Plaintiffs merely participated in the management of the unit.[5]

### 6. Plaintiffs Had No Authority to Hire or Fire, and Any Recommendations Made Were Not Given Particular Weight

For the exemption to apply, C.F.R. §541.106 mandates that an employee must be "directly concerned either with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those to who the hiring and firing functions are delegated." In addition, Cal. Code Reg. §11070(1)(A)(1)(c) states that any recommendations as to the change of status of other employees must be given *particular weight* to allow the employer to avail itself of this exemption.[6]

Plaintiffs did not have the ability to hire employees. While Defendant contends that Sepulveda's SM testified that his AMs could hire associates without his final review, Sepulveda testified to just the opposite – he had no authority to hire employees or set their starting pay. SGD 80, 81, 82. Similarly, while Perez's SM testified that AMs could hire and fire, Perez testified that only SMs had such authority. SGD 170.[7] Finally, while Prangner was involved in interviewing employees, he only made hiring recommendations to his SM, and those recommendations were rarely followed. SGD 236-238.

Defendant infers that Plaintiffs were involved in the hiring process because they conducted interviews of applicants. However, the "interviews" performed by

---

[5] Similarly, Wal-Mart cannot satisfy the second prong of the exemption if Plaintiffs' supervisory responsibilities are found, in fact, to constitute "[a] shared responsibility for the supervision of the same two or more employees in the same department." 29 C.F.R. §541.105. Defendant's Motion ignores the fact that Plaintiffs shared supervisory responsibilities. Plaintiff Perez testified that while she was an overnight manager, there were two overnight managers on duty each night, who shared the responsibility for the same ten employees working. SGD 137.
[6] While not in effect when Wage Order 7-2001 was codified, C.F.R. §541.105 (2004) provides guidance on factors to consider in determining whether "particular weight" is given, such as the frequency with which the suggestions are made and relied upon.
[7] Defendant contends that Perez could make offers of employment to applicants. However, while Perez could *communicate* an offer of employment to an applicant, the SM was the one that actually made the decision to hire all applicants. SGD 356.

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1    Plaintiffs merely consisted of entering in the applicant's answers to a series of

2    questions contained on a standardized form created and implemented by Wal-Mart.

3    SGD 82, 169, 236-238.   In fact, Perez testified these interviews could be performed

4    by anyone, not necessarily a member of management, and that she only completed

5    interviews when she was told to.  SGD 169, 170.  Regardless, these interviews do

6    not constitute the authority to hire.  *See e.g. Petersen v. The Cleveland Institute of*

7    *Art,* 2011 U.S. Dist. LEXIS 41578, *28 (N.D. Ohio 2011) (no authority to hire

8    where plaintiff only hired employees when supervisors instructed him to).

9          Moreover, an accurate review of Plaintiffs' testimony reveals that they did

10   not have any authority to approve merit increases, transfers from one store to

11   another, or changes in status from part time to full time.  SGD 8, 77-80, 172, 173,

12   247.  In fact, Sepulveda testified that in these types of situations, he was nothing

13   more than a "conduit" between the associate and the store manager.  SGD 77-78.

14         Plaintiffs did not even have the ability to accurately evaluate associates.  The

15   "Assistant Manager Expectations" given by the Tracy SM (a store all Plaintiffs

16   worked as Assistant Managers) explicitly mandated that anything other than

17   standard evaluations, such as above or below-standard evaluations, be approved by

18   the SM.  SGD 306.  Combined with the fact that evaluations consisted of little more

19   than checking boxes on a standardized form created by Wal-Mart, it is clear that

20   Plaintiffs' evaluations were not given particular weight.  SGD 77, 78, 172.

21         Plaintiffs did not have the ability to fire employees.  SGD 85, 88, 170, 365.

22   Sepulveda did not have the authority to fire employees, only the SMs and DMs did.

23   SGD 85, 86.  While Defendant indicates that Sepulveda participated in exit

24   interviews, Sepulveda's involvement was limited to checking the reason for the

25   associate's termination on a standardized form provided by Defendant, which also

26   provided the corporate guidelines on whether the terminated associate would be

27   eligible for rehire.  SGD 87, 88, 89.  Perez only had the ability to fire employees

28   directly when she was the overnight manager, and only in the case of absenteeism,

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

not when she was an AM during the day or for any other types of misconduct such as theft or failure to follow company procedure.  SGD 184.  Plaintiffs' testimony demonstrates that, at the very least, a material issue of fact exists as to their authority to fire employees.  *See Lopez v. United Parcel Service, Inc.,* 2010 U.S. Dist. LEXIS 26072, *18 (N.D. Cal. 2010) (material fact existed where plaintiff testified that termination power was limited to specific "steps of discipline").

Moreover, Defendant has produced no evidence demonstrating that even if Plaintiffs provided recommendations on the hiring, firing, or change of status of associates, those recommendations were given any weight.  Sepulveda testified that his recommendations were ignored on numerous occasions.  SGD 82.  Prangner testified that most of his recommendations were not followed.  DP 238.  As such, Plaintiffs' recommendations were not given particular weight.  *Hill v. R+L Carriers, Inc.,* 690 F.Supp.2d 1001, 1007 (N.D. Cal. 2010) (plaintiff's recommendations were not given particular weight where plaintiff testified that defendant did not follow them); *Lopez,* 2010 U.S. Dist. LEXIS 26072, *18 (material fact existed where plaintiff's recommendations were only heeded once).

### 7. **Plaintiffs Did Not Customarily or Regularly Exercise Discretion and Independent Judgment**[8]

Discretion and independent judgment involves: (1) acting only after considering and comparing various possible courses of conduct as opposed to acting within rigid guidelines; (2) acting with little or no supervision; and (3) acting with respect to matters of significance. *Nordquist,* 32 Cal.App.4th at 573. "An employee who merely applies his knowledge in following prescribed procedures or determining which procedures to follow…is not exercising discretion and

---

[8] The pre–2004 federal regulations use the phrase "discretionary powers" with respect to the executive exemption (C.F.R. § 541.107), reserving "exercise of discretion and independent judgment" for the administrative exemption. (C.F.R. § 541.207(a).) However, the applicable Wage Order expressly includes the phrase "exercise of discretion and independent judgment" for both exemptions.  Thus, the court should "look to section 541.207 for interpretative guidance as to both state law exemptions."*Taylor,* 190 Cal. App. 4th at 1024.

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1    independent judgment." CFR §541.207(c)(1).

2        As described in detail above, Plaintiffs were the lowest rung of management

3    in the store and were always supervised by SMs, CoMs, DMs and even regional

4    managers in the Home Office. *See* II.A.   Moreover, Plaintiffs were not presented

5    with opportunities to compare possible courses of conduct before acting.  Each of

6    Plaintiffs' job duties was explicitly governed by Defendant's modulars and

7    corporate policies, down to the exact height of the shelves, the location of pegs, and

8    the number of items of product on each shelf or peg.  SGD 12, 394, 299.  In fact,

9    Wal-Mart's policies dictated exactly how merchandise should be displayed through

10    its "Just Like the Picture" program.  SGD 250.  All three Plaintiffs testified that

11    they had no discretion or independent judgment on how to set up the merchandise,

12    but instead had to set it up "per corporate direction."  SGD 13.  No AMs had the

13    discretion to add new items to the modulars, or the store, without approval from the

14    Home Office.  SGD 17, 18, 19.  All prices were dictated by the Home Office,

15    Plaintiffs were not involved in setting prices.  SGD 14.

16        As described in section III.A.3., *supra,* Plaintiffs had no discretion or

17    independent judgment in hiring, firing, promoting or even evaluating associates.

18    SGD 9.  Indeed, some of Plaintiffs' duties are explicitly excluded from the exercise

19    discretion and independent judgment.  29 C.F.R. §541.207(c)(5) (screening

20    personnel by entering information on pre-printed forms does not require the

21    exercise of discretion).  Based on these facts, Plaintiffs did not  exercise discretion

22    and independent judgment.  *Plaunt v. Dolgencorp, Inc.* 2010 U.S. Dist. LEXIS

23    132135, *33 (M.D. Pa. 2010) (plaintiff who did not hire, only interviewed and

24    made recommendations, did not exercise discretion).

25        Scheduling left no room for discretion or independent judgment as schedules

26    were "generated" by the Home Office using a computer program that would match

27    available associates with shifts that needed to be filled.  SGD 9, 30, 70. Indeed the

28    Tracy SM's "Assistant Manager's Expectations" clearly delineated the lack of

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1  discretion and independent judgment Plaintiffs had with regard to staffing: "You do

2  not have the authority to override any associates [sic] availability, if it is in the

3  system incorrectly the associate must see the store manager & it will be corrected."

4  SGD 70.  Moreover, Plaintiffs were not permitted to determine which shifts to cut,

5  as Defendant asserts, but rather, only did so when instructed and had to follow

6  specific direction in determining which associates to send home.  SGD 31.  *Morgan*

7  *v Family Dollar,* 551 F.3d 1233, 1270-71 (11th Cir. 2008) (store manager limited

8  by store hours, a limited payroll budget, and a rule against overtime for associates

9  "had few, and infrequently exercised, discretionary powers").

10      Similarly, associates' training was completely governed by Wal-Mart policy.

11  The training consisted of associates completing computer-based learning modules,

12  and Plaintiffs' only responsibility was to ensure that associates completed these

13  modules.  SGD 9, 35.  Plaintiffs' discretion to delegate tasks to hourly associates

14  was limited because Wal-Mart's restrictive labor budgets did not provide for

15  enough hourly associates to complete the tasks.  SGD 9, 61, 92, 96.  Disciplining

16  associates similarly required only that Plaintiffs follow Wal-Mart's policy, which

17  did not provide for any discretion for assistant managers.  SGD 8.

18      Even if Defendant could show that Plaintiffs exercised discretion and

19  independent judgment in some of the duties they performed, it has not

20  demonstrated that Plaintiffs have done this customarily and regularly.  "The phrase

21  'customarily and regularly' signifies a frequency which must be greater than

22  occasional[.]"  29 C.F.R. 541.§207(g).  Defendant asserts that AMs were expected

23  to verify and confirm the accuracy of invoices from local vendors, but even if

24  Plaintiffs did this, they did not do it routinely and it only entailed verifying the

25  number of pallets or crates in the delivery. SGD 27.  Similarly, Perez could only

26  fire employees during the overnight shift and for the limited reason of absenteeism.

27  SGD 85, 86, 184.  Defendant fails to prove that Plaintiffs performed any duties

28  involving discretion "regularly" and "customarily".

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1    In addition, Defendant fails to demonstrate that Plaintiffs exercised discretion

2    with respect to matters of significance.  Plaintiffs' evidence shows that Plaintiffs

3    were closely regulated by Wal-Mart's policies, and could not stray from those

4    policies without getting approval from their supervisors.  SGD 9, 12-15, 17.

5    Indeed, supervisor approval was required for the majority of their actions.  Id., SGD

6    8, 23, 30, 31, 36.  *Hill,* 690 F. Supp. 2d at 1006 (company's rule that employee seek

7    manager approval for most duties eliminated employee's discretion).

8    Finally, the fact that Wal-Mart governed Plaintiffs' actions with extensive

9    corporate policies and guidelines precluded Plaintiffs from exercising discretion

10   and independent judgment in matters of significance.  *Morgan,* 551 F.3d at 1273

11   (discretion not exercised where company's manuals directed every aspect of the

12   store's day to day activities, including store layouts, selection, presentation, and

13   pricing of merchandise, payroll budgets, and staffing levels); *Plaunt,* 2010 U.S.

14   Dist. LEXIS 132135 at *30.[9]  Indeed, Defendant's argument essentially equates

15   supervision and direction with discretion.  As the exemption has a separate element

16   requiring that the employee supervise two or more employees, such an

17   "interpretation of the analysis renders the 'discretion' inquiry superfluous" and is

18   therefore inappropriate.  *Plaunt,* 2010 U.S. Dist. LEXIS 132135, *31-32, n.7.

### 8.  Genuine Issues of Fact Exist as to Whether Plaintiffs were Primarily Engaged in Management Duties

21   Wal-Mart must establish not just that Plaintiffs' jobs involved management

22   duties, but that Plaintiffs were "primarily" engaged in them.  Under California law,

23   the phrase "primarily" means more than one-half of the employee's work time is

24   spent performing duties that qualify as exempt. *Cal. Labor Code*, § 515 (e); *8 Cal.

25   Code Regs.* §11070(2)(K).  The inquiry is "a purely quantitative approach."

26   *Ramirez*, 20 Cal.4th at 797.  As recognized by this Court: "First, the court must

---

[9] *Donovan v. Burger King Corp.,* 675 F.2d 516, 521 (1st Cir. 1982) involves a
"primary duty" analysis rather than a "primarily engaged" analysis and is therefore
improperly relied on.  Moreover, here, Plaintiffs did not have the discretion to set
the number of employees as the assistants in *Donovan* did.

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1  examine, in an individualized fashion, the work actually performed by an employee

2  to determine how much of that work is exempt." [Doc. No. 110 at 32:22-33:2].

3      What is glaringly absent from Wal-Mart's motion, however, is any attempt to

4  quantify the amount of time Plaintiffs spent on exempt and non-exempt tasks. This

5  alone is enough to deny Wal-Mart's motion. *See Greko v. Diesel USA, Inc.,* 277

6  F.R.D. 419, 424 (N.D. Cal. 2011) (denying motion for summary judgment because

7  employer failed to apportion time spent on exempt and non-exempt tasks); *Ramirez,*

8  20 Cal.4th at 803 (remanded to trial court with explicit direction to "itemize the

9  types of activities that it considers to be sales related, and the approximate average

10  time that if finds the employees spent on each of these activities.")

11      **(a)   Plaintiffs Spent the Majority of their Time on Non-Exempt Tasks**

12      "Nonexempt work is easily identifiable where…it consists of work of the

13  same nature as that performed by the nonexempt subordinates of the 'executive.'"

14  C.F.R. §541.111(b).  Despite Defendant's attempts to misconstrue the evidentiary

15  record, the record is clear that Plaintiffs spent the majority of their time performing

16  non-exempt tasks.[10]  "In a large retail establishment…where the replenishing of

17  stocks of merchandise on the sales floor is customarily assigned to a nonexempt

18  employee, the performance of such work by the manager or buyer of the

19  department is nonexempt."  CFR §541.108 (c).  Similarly, a retail manager who

20  participates "in such activities as making sales to customers, replenishing stocks of

21  merchandise on the sales floor, removing merchandise from fitting rooms and

22  returning to stock or shelves" is performing non-exempt tasks. CFR §541.108(e).

23  _____

[10] Under the executive exemption test, the following types of activities are
considered exempt: (1) interviewing, selecting and training employees; (2) setting
and adjusting rates of pay and hours; (3) directing employees' work; (4)
maintaining production or sales records for use in supervision or control; (5)
appraising employee productivity and efficiency for purpose of recommending
promotions; (6) handling employee complaints and grievances and disciplining
employees; (7) planning the work; (8) determining the techniques to be used; (9)
apportioning the work among the workers; (10) determining the type of materials
and supplies to be used or merchandise to be bought, stocked, and sold; (11)
controlling the flow and distribution of materials or merchandise and supplies; and
(12) providing for the employee's and the property's safety.  29 CFR 541.102(b).

1   Whether a task is properly classified as exempt or non-exempt is a mixed question

2   of law and fact, while calculating the amount of time an employee actually spent on

3   specific tasks is a factual determination.  *Sav-on,* 34 Cal. 4th at 330.

4          Instead of attempting to meet its burden by quantifying the time Plaintiffs

5   spent on non-exempt tasks and exempt tasks, Defendant contends that a seemingly

6   large list of tasks mandates a finding that Plaintiffs spent more than 50% of their

7   time on exempt tasks.  This fails for multiple reasons.  First, it is Defendant's

8   burden to demonstrate the absence of a genuine issue of material fact for trial –

9   here, whether Plaintiffs spent more than 50% of their time on exempt tasks.

10   *Celotex,* 47 U.S. at 323.  Defendant cites to no evidence demonstrating the amount

11   of time the Plaintiffs spent on any of their duties and has therefore failed to meet its

12   initial burden.  Second, the Court must view the facts and draw inferences in the

13   manner most favorable to the non-moving party.  *Anderson,* 477 U.S. at 252.  The

14   undisputed evidence (indeed, the only evidence) clearly demonstrates that Plaintiffs

15   spent more than 50% of their time on non-exempt tasks.  SGD 152, 329, 330, 357.

16   Third, the smoke and mirrors lists of managerial duties Defendant cites in its papers

17   does not alter Plaintiffs' testimony about the amount of time they spent on non-

18   exempt tasks.  Wal-Mart's reliance on these "new" job duties is unpersuasive as

19   many of the purported "new" duties are included as duties in the previously

20   submitted Sepulveda and Prangner declarations .  In addition, many of these "new"

21   duties are, in fact, expressly deemed non-exempt by the applicable regulations.

22          Defendant's "new" duties for Prangner have no effect on Prangner's previous

23   testimony that he spent 30% of his time on exempt duties.  Despite the fact that

24   Plaintiffs dispute whether Prangner actually performed these functions, each of the

25   duties listed is a red herring as follows: Prangner testified that he did not "strategize

26   to promote sales" [SGD 264]; the only way Prangner "maximized sales and

27   profitability" was by moving freight from the warehouse to the sales floor [SGD

28   268]; Prangner testified that all promotional plans were established by the Home

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

Office [SGD 266]; "overriding exceptions in employees' time records" is included in "handling transactions that required manager approval" and is a clerical function, as it was only utilized if something prevented the employee from clocking in [SGD 311]; "ensuring recordkeeping requirements were followed and records were accurate, including verifying cash placed in deposit bags" is included in "directing or supervising work by hourly associates"  and bookkeeping (i.e. counting cash deposits) is non-exempt [29 C.F.R. §541.115(c)(3)]; "ensuring meal and rest break policies were followed" and "monitoring hourly associate attendance" and "ensuring security protocols and sales procedures were followed" are all included in "directing or supervising work by hourly associates"; "interviewing associates for promotions" is included in "conducting …annual evaluations of hourly associates"; "selecting products that were volume-producing for his store" is included in "dealing with buyers or vendors" ; "managing the automated payroll system" is a non-exempt task.  CFR §541.108(b); "Staffing" is included in "preparing work schedules for hourly associates"; "ensuring associates completed computer based learning" is included in "training hourly associates" as Wal-Mart trained all employees through the computer based learning system [SGD 33]; and "training and developing associates" is included in "training hourly associates."

The "new" duties cited for Sepulveda can similarly be rejected as having no effect on his prior testimony that he spent at most 25% of his time on exempt tasks: "supervising daily store operations to ensure compliance with operational guidelines and store expectations" is included in "reviewing reports of sales, wages, profit, and merchandise shrinkage in the store [SGD 312]; Sepulveda did not "administer store planning, scheduling, budgeting and financial plans"[SGD 90]; Sepulveda testified that the SM "decided whether to transfer an employee from his store to another store," but he did not [SGD 95]; "evaluating associates on their performance and providing developmental feedback" is included in "conducting …annual evaluations of hourly associates";  "training and developing 300

associates as training coordinator" and "training and developing overnight and daytime stockers" are included in "training hourly associates"; Sepulveda testified that he did not "Oversee the UPC office, claims office, cash office, personnel office, back room, and all the receiving area" [SGD 48] (moreover, this duty is included in "directing or supervising work by hourly associates"); "touring departments with Department Managers, assigning tasks aimed towards improving their departments and following up on these tasks" is the same as "touring the store, making notes and discussing them with Department Managers or associates as to work to be done that day"[11]; "giving discounts to customers and authorizing customer refunds" is included in "helping customers in-person or on the phone who need or request a manager" and "responding to customer comments or complaints" and "handling transactions that required manager approval" (also non-exempt pursuant to C.F.R. §541.109(c) (retail SM or AM does not perform exempt work "when he personally waits on a special or impatient customer" and C.F.R. §541.108(e) ("making sales to customers" is not exempt work)).

Furthermore, Defendant offers absolutely no evidence to refute Sepulveda and Prangner's testimony that they spent 70% to 75% of their time on tasks that are non-exempt. SGD 329, 330, 357. *See* C.F.R. §541.108(e) ("making sales to customers, replenishing stocks of merchandise on the sales floor, removing merchandise from fitting room and returning to stock or shelves, however, is not [exempt work]"); C.F.R. §541.109(c) (maintenance work, relieving subordinates during rest or vacation periods, regular cleaning are not exempt)[12]. Thus, Defendant has failed to meet its burden in demonstrating that the exemption was

_____

[11] Whether the time spent "touring" the departments is exempt is disputed. Prangner testified that the AMs would bring a basket filled with feather dusters, cleaning supplies, numbers, and signs, and would immediately fix any issue identified by the SMs. SGD 231. Sepulveda testified that he had a cart with him during his tours so he could return merchandise to the shelves. SGD 334. Perez testified that during the tours, the SM would point things out and she'd do the work herself. SGD 153.
[12] Indeed, Prangner specifically testified that he was responsible for covering the hourly associates' work when they were completing training. SGD 259

1    properly applied to Sepulveda and Prangner.

2           Similarly, Defendant has failed to meet its burden of establishing that no

3    issue of fact exists as to whether Perez was primarily engaged in managerial duties.

4    Defendant does not cite to any specific testimony demonstrating that Perez spent

5    more than 50% of her time on exempt tasks.  Instead, it cites to one conclusory

6    statement made by an SM that his AMs would spend a 2.5-3 hours "in the office"

7    on a variety of tasks, including some that may not be exempt or even related to her

8    job at all (i.e. "reading emails" and "talking with associates").  SGD 196.  The SM

9    later admitted that his testimony lacked foundation as he did not recall Perez

10   spending that amount of time in the office.  SGD 196.  Other than this

11   unsubstantiated comment by an SM, Defendant does not cite to one piece of

12   evidence or testimony demonstrating that Perez spent more than 50% of her time on

13   exempt tasks.  Moreover, the list of duties provided for Perez contains a number of

14   duties that Perez specifically testified that she did not, in fact, do [SGD 140, 181,

15   197], did on rare occasions or for very limited periods of time [SGD 141, 148, 156,

16   165, 168, 186], or mischaracterize Perez's testimony. [SGD 140, 145, 154, 156].

17          Regardless, the evidence is clear that Perez spent over 50% of her time on

18   non-exempt duties.  Perez testified that when she was an overnight manager, she

19   spent the majority of her time "doing freight", i.e. stocking the shelves, and as a

20   daytime manager, she spent at least half of her day on the cash register.  SGD 152,

21   349.  In all, Perez spent no more than 25% of her time performing exempt tasks.

22   SGD 347, 348, 350.  Based on the evidentiary record, Defendant fails to meet its

23   burden to show that Perez spent more than 50% of her time on exempt tasks.

24          Rather than proving its assertion that Plaintiffs are primarily engaged in

25   exempt tasks, Wal-Mart simply tells the Court which tasks it contends are exempt,

26   and then, in a conclusory fashion, states that Plaintiffs *could not* have spent more

27   than 50% of their time on non-exempt tasks.  This is a woefully inadequate ground

28   upon which to attempt to meet its burden of proving that Plaintiffs were executive

1  employees.  *See Greko,* 277 F.R.D. at 424 (rejecting defendant's suggestion that the

2  number of managerial tasks plaintiff admitted to performing precluded plaintiff

3  from being able to spend the majority of his time on non-exempt tasks: "the Court

4  may not infer, as [defendant] suggests, that the management tasks [plaintiff]

5  admitted to performing necessarily would occupy the majority of his time.  *See e.g.,*

6  *Thomas v. Ponder,* 611 F.3d 1144, 1149 (9th Cir. 2010) (providing that all

7  inferences are drawn in favor of the non-moving party).")[13]

8  **(b)   Genuine Issues of Fact Exist as to Whether Plaintiffs' Non-Exempt**
9  **Tasks Were Closely Related to Their Exempt Work**

10  The regulations provide numerous examples of when work may be deemed

11  closely related to managerial duties.  C.F.R. §541.108.  As discussed above, many

12  of the tasks Plaintiffs' performed are expressly deemed non-exempt.  *See* CFR

13  §§541.108(b) (keeping time records and preparing payroll); §541.108(e) (sales,

14  replenishing stocks); §541.109(c) (cleaning, maintenance work, helping impatient

15  customers); §541.115(b) (work of the same nature as that performed by

16  subordinates); §541.115(c)(3) (verifying cash deposits).

17  Moreover, despite the fact that Defendant argues that many of the non-

18  exempt tasks Plaintiffs performed were closely related to their managerial tasks, it

_____

[13] Defendant cites three cases to support the unsubstantiated statement that the
number of managerial tasks Plaintiffs performed mandates a finding that they were
primarily engaged in managerial tasks.  The first, an administrative decision by
California's Labor Commissioner, is inapplicable because there the Labor
Commissioner made a credibility determination after actually weighing the
evidence presented by the parties, an action unavailable on a motion for summary
judgment.  *Burger v. Wal-Mart Stores, Inc.,* Case No. 13-29594, *7 (Ex. 52 to
Yamini Dec.) (weighing evidence and finding plaintiff's testimony "largely
inconsistent.")  The second case, *Ellis v. United Parcel Service, Inc.,* 2012 WL
2356630 (Cal. Ct. App. 2012), was not certified by publication by the California
Court of Appeal and therefore may not be relied on.  Cal. Rule Court 8.1115(a).
Regardless, there plaintiff testified that he performed non-exempt tasks on only 80
to 90 days per year and as a result the court found that the majority of plaintiff's
work was exempt.  *Id.* at *30-31.  Similarly, the cite to *Musgraves v. Sears Holding
Management Corp., et al.,* 2012 U.S. Dist. LEXIS 113989 (C.D. Cal. 2012) is
misapplied as the court held that plaintiff spent more than 50% of his time on non-
exempt tasks: "The Court proceeds on the basis of Plaintiff's testimony that he
actually spent 52 to 86 percent of his time performing manual labor and other non-
exempt tasks, because Kmart has submitted no evidence to the contrary." *Id.* at *42.

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1  makes no effort whatsoever to quantify how much time Plaintiffs spent on directly

2  related tasks versus clearly exempt tasks.  For example, while Defendant states that

3  Plaintiffs may have performed some of the non-exempt tasks in connection with

4  training associates, thereby altering its status to an exempt task, it makes no effort

5  to quantify what percentage of time Plaintiffs spent simply performing the non-

6  exempt tasks versus actually doing these tasks as a tool to train their associates.

7  Defendant again fails to meet its burden, as recognized in the Northern District of

8  California's decision denying a retail store employer's summary judgment motion

9  on exactly these grounds. *Greko,* 277 F.R.D. at 424.[14]

10        Finally, Plaintiffs' performance of non-exempt tasks was not simply a matter

11  of preference that they perform the tasks themselves over an hourly associate.  Each

12  Plaintiff testified that it was a matter of necessity based on the labor budget of the

13  store (i.e., the number of employees available to perform the non-exempt tasks) and

14  the workloads placed on the AMs by SMs and DMs.  SGD 9, 61, 92, 96, 151, 277.

15  In fact, Sepulveda expressly complained about the staffing to his DM, explaining

16  that the lack of necessary staffing was causing him to spend many hours each day

17  working on the cash registers and putting returned merchandise away.  SGD 337.

18  Thus, Plaintiffs' performance of non-exempt tasks was not by choice, but rather,

19  was dictated by their circumstances, and therefore remains non-exempt. *Anderson*

20  *v. Dolgencorp.,* 2011 U.S. Dist. LEXIS 49658, (N.D. N.Y. 2011) (labor budget's

21  restrictions forced managers to perform more non-exempt tasks).

22 23        **(c)    Wal-Mart Expected Its Assistant Managers to be Primarily
                  Engaged in Non-Exempt Work**

---

24  [14] Defendant's reliance on *Ellis* and *Musgraves* to assert that Plaintiffs' work was
     closely related to managerial tasks is improper for the same reasons cited above.

25  Moreover, its reliance on *Grace v. Family Dollar Stores, Inc.,* 637 F.3d 508, 517
     (4th Cir. 2011) and *Ward v. Family Dollar Stores, Inc.,* 2011 U.S. Dist. LEXIS

26  129969 (W.D. N.C. 2011) is misplaced as each of these cases involve an analysis of
     the employee's primary duty under the FLSA, rather than whether s/he was

27  *primarily engaged* in managerial duties. Moreover, both decisions analyze
     plaintiffs' duties under a provision enacted in 2004 [C.F.R. §541.106(2004)

28  ("Concurrent duties")] and may not be utilized in interpreting California's statutes.

1    Despite Defendant's contentions, the fact that Plaintiffs were primarily

2    engaged in non-exempt tasks is not contrary to Wal-Mart's realistic expectations.

3    In support of this argument, Defendant relies on its job descriptions to describe

4    what it expected of its assistant managers. *Ramirez,* however, expressly

5    disapproved of the reliance on job descriptions to prove an employer's realistic

6    expectations. *Ramirez,* 20 Cal.App.4th at 802("if hours worked on sales were

7    determined through an employer's job description, then the employer could make

8    an employee exempt from overtime laws solely by fashioning an idealized job

9    description that had little basis in reality.")  Regardless, the job descriptions

10   themselves contained non-exempt requirements, such as "[p]erforming the

11   responsibilities of other positions as needed", "[p]roviding a high level of

12   merchandise in-stock position for assigned area", "ensuring a safe and clean

13   environment," "[e]nsuring that your area .. has sufficient supplies," "[c]ommunicate

14   effectively with Customers and other Wal-Mart Associates[.]" SGD 313. C.F.R.

15   §541.109(c).  In addition, Plaintiffs testified that the duties enumerated in the job

16   descriptions did not accurately reflect their actual job duties.  SGD 6.

17   In addition, while Wal-Mart asserts that it expected its assistant managers to

18   understand and utilize the information contained in financial and planning reports,

19   each Plaintiff testified that s/he was not trained on how to analyze and validate

20   these reports.  SGD 22-25.  Without the training on how to analyze such reports as

21   profit and loss balance sheets, exception reports, and "flash sales" reports, it is

22   unrealistic of Wal-Mart to expect its AMs to perform these duties.

23   Instead, when inquiring into the *realistic requirements* of the job, "the court

24   should consider, first and foremost, how the employee actually spends his or her

25   time." *Ramirez,* 20 Cal.4th at 802.   As described above, Plaintiffs actually spent

26   the majority of their time on non-exempt tasks.  "But the trial court should also

27   consider whether the employee's practice diverges from the employer's realistic

28   expectations, whether there was any concrete expression of employer displeasure

1   over an employee's substandard performance, and whether these expressions were

2   themselves realistic given the actual overall requirements of the job." *Id.*

3       A more accurate portrayal of Wal-Mart's expectations of the AMs' duties

4   was provided by the SM in the Tracy, California, store, where all three Plaintiffs

5   worked as AMs. SGD 43, 130, 207, 306. In the document titled "Assistant

6   Manager Expectations" the SM specifically required closing AMs to work "until

7   midnight or until the store is ready for the next days [sic] business … including

8   softlines, no shopping carts, a clean courtesy desk…no baskets behind register 17,

9   parking lot free of carts & trash[.]" SGD 307. The SM further mandated that there

10  be "no freight left on sales floor[,]" "lounge clean at all times, hallway clear all the

11  way to receiving…clean bathrooms and management office kept clean." SGD 308.

12  Moreover, "[i]f you are overstocked in one of your areas it is your responsibility to

13  fix it." SGD 309. "You are responsible for walking your outs personally on

14  Mondays for consumable departments…and all other departments on Tuesday by

15  11:00 a.m." Id. Finally, "if a safety team member informs you of a hazard on the

16  floor I expect you to react immediately." SGD 310. Plaintiffs' SM's expectations

17  required Plaintiffs to perform non-exempt work personally, thereby demonstrating

18  Wal-Mart realistically expected Plaintiffs perform non-managerial functions.

19      Plaintiffs' practices do not diverge from Wal-Mart's actual expectations.

20  There is no evidence of "concrete expressions of employer displeasure" about

21  Plaintiffs performing non-exempt work. In fact, the evidence is to the contrary.

22  Sepulveda was commended for his "[g]reat customer service skills, always willing

23  to go out of his way to help customer. Great average sales per customer, and good

24  customer counts. Good cashier[.]" SGD 331. He was later critiqued on whether he

25  adequately cleaned his store: "Danny needs to make sure the floor is clean for our

26  customers at 7:00 am. No aisle blocked and all trash and hazards off the floor."

27  SGD 332. Indeed, Sepulveda testified that his store managers told him directly to

28  perform non-exempt tasks on a regular basis. SGD 92, 111. Similarly, Prangner

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1   was commended for his "excellent customer service" and "suports [sic] the cashiers

2   front end" and was chastised because his sales per transaction was too low.  SGD

3   358.  Perez was also commended for taking "good care of her customer's needs"

4   but was critiqued on her average sales per transaction scan features.  SGD 342.

5   Moreover, Sepulveda testified that AMs were told to be on the registers during

6   busier periods, and Wal-Mart even scheduled AMs to work for hours at the

7   registers.  SGD 314.  Expectations to keep the store clean required that Plaintiffs

8   perform manual labor rather than non-exempt tasks.  SGD 51, 61, 152, 154, 231,

9   310, 333.  Finally, each Plaintiff was evaluated at the "meet expectations" level

10   and, in fact, Sepulveda was deemed a "rising star."  SGD 339, 340, 346, 363.

11         Based on the evidentiary record, Wal-Mart may not rely on its idealistic job

12   descriptions of an AM's duties.  The facts of this case are that Plaintiffs spent a

13   majority of their time on non-exempt tasks, Wal-Mart knew that they were

14   regularly performing non-exempt work, Wal-Mart expected them to do so, and

15   praised them on many of their non-exempt tasks.  As such, Defendant cannot assert

16   that Plaintiffs' substandard performance was the only reason they were primarily

17   engaged in non-exempt duties.  *See Williamson v. Cook Composites and Polymers*

18   *Co.,* 2009 U.S. Dist. LEXIS 120457, *24-25 (C.D. Cal. 2009) (where defendant

19   knew employee was performing non-exempt work, it did not meet its burden of

20   establishing that plaintiff "fell below the 50 percent mark – i.e., performed non-

21   management duties – 'due to his own substandard performance.'").

22         Finally, Wal-Mart's restrictions on the labor budgets for its stores ensured

23   that its AMs performed non-managerial tasks.  For example, when hourly

24   employees were sent home to reduce payroll, the SM's expectations still had to be

25   met and the non-managerial tasks fell to the AMs.  SGD 315.  In fact, Plaintiffs

26   were informed that any overtime worked by hourly employees would result in

27   negative evaluations.  SGD 338.  Plaintiffs complained to their SMs and DMs about

28   the lack of necessary staffing, and even informed them that they were spending

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1   multiple hours each day working the cash registers and putting returned

2   merchandise away.  SGD 337.  As a result, Wal-Mart's own practices preclude the

3   argument that it realistically expected AMs would not perform non-exempt tasks.

4   *See Anderson v. Dolgencorp.,* 2011 U.S. Dist. LEXIS 49658, (N.D. N.Y. 2011)

5   (restrictiveness of labor budget forcing managers to spend more time on non-

6   managerial tasks demonstrated that employer valued non-managerial duties).

7                **B. Plaintiffs Were Not Exempt Administrative Employees**

8          In order for Wal-Mart to avail itself of California's administrative exemption,

9   it must prove that Plaintiffs: (a) performed office or non-manual work directly

10   related to the management policies or general business operations of their

11   employer; (b) customarily and regularly exercised discretion and  independent

12   judgment; (c) regularly and directly assisted an employee in a bona fide executive

13   or administrative capacity; (d) were primarily engaged in exempt administrative

14   duties; and (e) earned at least two times the state minimum wage.  *Cal. Code Regs.*

15   11070(1)(A)(2).  Defendant fails to meet its burden for this exemption for the same

16   reasons Defendant fails to prove that they meet the executive exemption.  Namely,

17   for the same reasons cited in Section III.A.4., *supra,* Plaintiffs did not customarily

18   and regularly exercise discretion and independent judgment.  In addition, Defendant

19   once again fails to  prove that Plaintiffs performed work directly related to Wal-

20   Mart's business operations, fails to quantify the amount of time Plaintiffs spent on

21   administrative duties and consequently that they were primarily engaged in exempt

22   tasks, and fails to show that Plaintiffs regularly and directly assisted exempt

23   executives.  As Defendant must prove each of these requirements [*Taylor,* 190

24   Cal.App.4th at 1028], Defendant's motion must be denied.

25                **1.   Plaintiffs Did Not Perform Office or Non-Manual Work
                          Directly Related to Wal-Mart's General Business Operations**
26

27          First and foremost, the majority of Plaintiffs' work was not office or non-

28   manual work related to management policies or general business operations.  "The

1    requirement that the work performed by an exempt administrative employee must

2    be office work or nonmanual work restricts the exemption to "white-collar"

3    employees who meet the test." C.F.R. §541.203(a). "[I]f the employee performs so

4    much manual work (other than office work) that he cannot be said to be basically a

5    'white-collar' employee he does not qualify for exemption as a bona fide

6    administrative employee[.]"C.F.R. §541.203(b). Here, Plaintiffs testified that they

7    spent the majority of their time performing manual labor such as stocking shelves,

8    and on customer service and sales. *See* III.A.5, *supra*. Accordingly, Plaintiffs did

9    not perform administrative work and Wal-Mart's Motion must be denied. *Greko,*

10   277 F.R.D. at 424 ("Diesel makes no argument that the sales activity in which

11   Greko claims he was engaged fits this exemption. Accordingly, Diesel's motion for

12   summary judgment must be denied."). To the extent that Plaintiffs did limited

13   office work, it was not directly related to the management or general business

14   operations. To be "directly related" it must be both *qualitatively* administrative and

15   *quantitatively* of substantial importance to the management or operations of the

16   business. C.F.R. §541.205(a).

17        To be *qualitatively* administrative, the duties must be "performed at the level

18   of *policy* or *general* operations … In contrast, work duties that merely carry out the

19   particular, day-to-day operations of the business are production, not administrative,

20   work." *Harris v. Superior Court,* 207 Cal.App.4th 1225, 1236 (2012) (emphasis in

21   original). "[N]ot all activities that involve advising management, planning,

22   negotiating, and representing the company satisfy the qualitative component of the

23   'directly related' requirement." *Id.* at 1242-1243. Indeed, these types of activities

24   only satisfy the qualitative component when they affect management policies or

25   general business operations. *Id.*; *Martin v. Cooper Electric Supply Co.,* 940 F.2d

26   896, 905 (3d Cir. 1991) (negotiating prices and terms, representing the company,

27   and purchasing products for the company to sell were not administrative duties

28   where they involved "only routine aspects of sales *production*"). Here, Defendant

has produced no evidence that Plaintiffs were involved at the level of policy or general operations, or that their actions affected policy or general operations. Plaintiffs were not involved in creating of affecting any of Wal-Mart's policies, but instead simply executed Wal-Mart's policies and procedures down to how many packages of each product were placed on each shelf. SGD 12-18, 212, 294-299. As such, Plaintiffs' duties were not qualitatively administrative. *Eicher,* 151 Cal.App.4th 1373 (exemption not met for employee who did not participate in policy making or alter the general business operations).

Additionally, Plaintiffs' duties were not quantitatively administrative. To be quantitatively administrative, Plaintiffs' duties must be of substantial importance to the operations of the business. Here, Plaintiffs had no authority to negotiate or commit Wal-Mart to matters of significant financial impact, could not deviate from its policies or procedures, and did not carry out major assignments in conducting the operations of the business. SGD 12-18. As such, Plaintiffs' work was not of substantial importance to the operations of the business. *Campanelli v. Hershey Company,* 765 F.Supp.2d 1185, 1196 (N.D. Cal. 2011).

### 2. Plaintiffs Were Not Primarily Engaged in Exempt Administrative Duties

Wage Order 7-2001 provides: "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work … shall be considered in determining whether the employee satisfies this requirement." Cal.Code Regs. §11070(1)(A)(e). Again, Defendant makes no effort to quantify the amount of time Plaintiffs spent on any of the tasks it deems to be administrative. However, Plaintiffs testified that they spent the majority of their time on tasks such as stocking shelves, making sales, and working on the cash register. *See* III.A.5, *supra.* Even some of the tasks Defendant asserts are exempt, such as verifying cash deposits, are not exempt under this exemption. CFR §§541.205(c)(1), 541.208(f)

1  ("bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine

2  positions in any ordinary business and are not performing work directly related to

3  management policies or general business operations.")[15]

4         Contrary to Defendant's assertion, Plaintiffs did not perform the type of

5  "managing inventory" that would fall under the exemption.  Instead, Plaintiffs

6  managed inventory by performing manual labor, i.e. moving the merchandise from

7  the warehouse to the shelves.  SGD 13, 38, 39, 151, 152, 271, 329, 330, 357.  As

8  such, this duty may not be deemed administrative.  Moreover, Prangner did not

9  order merchandise from local vendors.  SGD 12, 28, 267, 272.  All employees,

10  including hourly associates, were required to reduce shrink. SGD 103-105; 251.[16]

11              **C. The Combination Exemption Does Not Save Defendant**

12         Defendant, for the first time, argues that Plaintiffs are exempt because they

13  satisfy the requirements of a combination exemption.[17]  However, Defendant has

14  not met the requirements of either of these exemptions, and therefore cannot avail

15  itself of a combination of the two. Defendant cites to no evidence of  the amount of

16  time spent on tasks that meet the administrative exemption but merely cites to

17  Sepulveda's and Prangner's declarations stating that they spent 25% and 30%  of

18  their time on exempt work. Instead, Plaintiffs' evidence demonstrates that plaintiffs

19  did not spend more than 50% on administrative or executive tasks, or both.  In

20  addition, Defendant may not avail itself of the combination exemption where, as

21  here, it fails to satisfy the administrative exemption's prerequisite of primarily

22  _____

23  [15] As described in footnote 9, *supra,* Plaintiffs' "participation in management
   meetings" is also disputed as Plaintiffs testified that their participation in these
24  meetings was nothing more than following the store managers around to perform
   non-manual labor as directed.  SGD 153, 231, 334.
25  [16] Defendant has produced no admissible evidence that Plaintiffs regularly and
   directly assisted Exempt Employees or that the SMs or CoMs delegate part of their
26  discretionary powers to AMs, including Plaintiffs.  To the contrary, as described in
   Section III.A.3, Plaintiffs had very little to no discretion or independent judgment
27  as those powers remained with the SMs at all times.  As such, Defendant fails to
   meet this prong of the exemption and the motion must be denied.
28  [17] Defendant's Answer raises no such defense.  [Doc. No. 23, Third Affirmative
   Defense]

1   working on matters of significance.  *Campanelli,* 765 F.Supp.2d at 1197.

2   Moreover, "Defendant has not presented specific evidence that plaintiffs primarily

3   performed any combination of exempt duties to satisfy the combination exemption"

4   and its motion should therefore be denied.  *Id.*

5   ### D. Meal and Rest Break Claims Prevail

6     Wal-Mart argues that Plaintiffs' meal and rest period premium claims fail

7   because Wal-Mart provided both meal and rest breaks.  Wal-Mart's argument relies

8   on a standard far narrower than the Supreme Court sets forth in *Brinker Rest. Corp.*

9   *v. Super. Ct.*, 53 Cal.4th 1004 (2012) and fails to present sufficient evidence to

10  rebut the presumption that Plaintiffs were not relieved of duty nor provided meal

11  periods. As the Central District recently stated: "[i]f an employer's records show no

12  meal period for a given shift over five hours, a rebuttable presumption arises that

13  the employee was not relieved of duty and no meal period was provided. An

14  employer's assertion that it did relieve the employee of duty, but the employee

15  waived the opportunity to have a work-free break, is not an element that a Plaintiff

16  must disprove as part of the plaintiff's case in chief. Rather … the assertion is an

17  affirmative defense, and thus the burden is on the employer, as the party asserting

18  waiver, to plead and prove it." *Ricaldi v. US Investigations Services, LLC*, 2012

19  U.S. Dist. LEXIS 73279, *11-12 (C.D. Cal. 2010) (citing *Brinker*, 133 Cal. App.

20  4th at 353 & n.1 (Weregar, J., concurring)).

21    Therefore, since Wal-Mart failed to record Plaintiffs' meal periods, Wal-

22  Mart must set forth sufficient evidence that there is no genuine issue of material

23  fact that Plaintiffs willingly waived the opportunity to have work free breaks. Wal-

24  Mart makes no effort to do so, instead arguing that it "had a policy of providing

25  managers with meal breaks and no evidence exists that Plaintiffs were discouraged

26  from taking meal breaks." Motion at 32:2-4.  Of course, Wal-Mart fails to cite any

27  such policy because no such policy ever existed. SGD 40.

28    Under the requirement to provide meal breaks, "a worker must be free to

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

1   attend to any personal business he or she may choose during the unpaid meal
2   period." *Brinker Rest. Corp.*, 53 Cal.4th at 340. Thus, the requirement is only
3   "satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) is free to
4   leave the premises, and (3) is relieved of all duty for the entire period." *Id.*
5   Furthermore, "an employer may not undermine a formal policy of providing meal
6   breaks by pressuring employees to perform their duties in ways that omit break." *Id.*
7   at 343 (citing *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962-63
8   (2005) [finding potential meal period violations where "defendant's management
9   pressured drivers to make more than one daily trip, making drivers feel that they
10  should not stop for lunch"]; *Jaimez v. Daiohs USA, Inc.,* 181 Cal.App.4th 1286,
11  1304–1305 (2010) [proof of common scheduling policy that made taking breaks
12  extremely difficult would show violation]).

13      Here, each Plaintiff testified that they were consistently unable to take
14  uninterrupted meal breaks in which they were relieved of all duties and able to
15  leave the premises. Sepulveda testified he routinely worked 10 straight hours
16  without a meal break and was never told anything about meal breaks for AMs. .
17  When he was able to sit down and eat a meal he did so while answering questions
18  from hourly associates. SGD 39. Sepulveda felt he could not complain about not
19  getting meal breaks because "[i]t was generally considered unacceptable to
20  complain to the store managers." SGD 98.  Perez was unable to take a lunch when
21  she was an overnight assistant manager, only being able to "grab a snack and eat it
22  on the go." As a day-time AM, many days Perez could not leave the property and
23  then "couldn't take a lunch being in the store." SGD 202. Prangner rarely had
24  uninterrupted meal breaks and would have to eat while he was on call. SGD 281.
25  When he was opening manager Prangner was unable to take a break until the
26  closing manager arrived, more than five hours after he started his shift[18]. SGD 281.

27  _____

28  [18] "[F]irst meal periods must start after no more than five hours." *Brinker Rest.*
    *Corp. v. Superior Court*, 53 Cal. 4th 1004 (Cal. 2012); Cal. Lab. Code § 512(b).

1    Wal-Mart fails to cite *any* evidence that Plaintiffs were able to take rest
2    periods, only noting that the standard articulated in *Brinker* also applies to rest
3    periods.  As a result, Defendant has *per se* failed to show there is no genuine
4    material issue of fact. Nevertheless, the record demonstrates that Plaintiffs were
5    also unable to take uninterrupted rest breaks. For Sepulveda, it "became normal not
6    to take breaks and that "it just became common practice that you did your work."
7    SGD 123.  Perez went every day without a meal break and was only able to take a
8    rest break "a couple of times" throughout her entire tenure as an AM. SGD 204.
9    Prangner rarely had uninterrupted rest breaks. SGD 283-284.

10   Plaintiffs were forced to skip their breaks because of Wal-Mart's combined
11   policies of low staffing, overworking, and enforcing the completion of every task.
12   "[T]here [was] so much to do" and stores were typically understaffed. SGD 39, 61,
13   151, 200.  Even when hourly employees were sent home to reduce payroll,
14   Plaintiffs had to ensure that the store managers' expectations were met and that all
15   required tasks got done by the end of the day. SGD 271. If expectations were not
16   met Plaintiffs were reprimanded. SGD 337.

17   **E. Triable Issues of Fact Exist as to Plaintiffs' Wage Statement Claim**

18   Defendant argues that Plaintiffs' inaccurate wage statements claim fails
19   because Plaintiffs were exempt, cannot show Defendant's failure to provide them
20   accurate wage statements was knowing and intentional, and cannot show they
21   suffered injury as a result of the inaccurate wage statements.  As set forth above,
22   Defendant has failed to meet its burden to establish that Plaintiffs were properly
23   classified as exempt as a matter of law.  Additionally, triable issues of fact exist as
24   to whether Defendant's failure to provide accurate wage statements was "knowing
25   and intentional" and whether Plaintiffs suffered "injury" as a result thereof.

26   Relying exclusively on *Morgan v. United Retail Inc*., 186 Cal. App. 4th 1136
27   (2010),  Defendant argues that it did not "knowingly and intentionally" provide
28   Plaintiffs inaccurate wage statements because there is a dispute as to Plaintiffs'

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

classification as exempt.  Such reliance is misplaced as the court in *Morgan* did not consider whether defendant's alleged noncompliance with section 226 was knowing and intentional.  Instead, it concluded that defendant's wage statements complied with the requirements of the statute.  *Id.* at 1149 n.9.  Moreover, Defendant "cannot carry its burden on summary judgment simply by asserting in a conclusory fashion in an argumentative pleading that it acted under a good faith belief plaintiff[s] w[ere] exempt.  The presence or absence of a good faith belief on [Defendant's] part is a factual question that must be resolved at trial."  *See Lopez,* 2010 U.S. Dist. LEXIS 26072, *29-30; *Rieve  v. Coventry Health Care, Inc*., 2012 U.S. Dist. LEXIS 58603, *56 (C.D. Cal. Apr. 25, 2012) (refusing "to hold, as a matter of law, that there was a good faith dispute as to Plaintiff's exempt status" where defendants failed "to meet their burden of proving Plaintiff was exempt under California law.")

Defendant's claim that Plaintiffs cannot demonstrate any injury suffered as a result of inaccurate wage statements also fails.  "While there must be some injury in order to recover damages [under section 226(e)], a very modest showing will suffice."  *Jaimez,* 181 Cal. App. 4th at 1306; *see also Wang v. Chinese Daily News, Inc*., 435 F. Supp. 2d 1042, 1051 (C.D. Cal. 2006) ("Proof of injury under Section 226 is set against a low standard because the purpose of the wage statement requirement is that employees need not engage in the discovery and the mathematical computations to analyze the very information that California law requires.").  "[B]ecause the injury element in section 226(e) only requires a 'very modest showing,' this lawsuit, and the difficulty and expense incurred by [Plaintiffs] in reconstructing time and pay records is sufficient evidence that they suffered [] injury."  *McKenzie v. Fed. Express Corp*., 275 F.R.D. 290, 300 (C.D. Cal. 2011).[19]  Thus, Defendant's request for summary adjudication as to Plaintiffs'

_____

[19] Additionally, Defendant's suggestion that Plaintiffs must present evidence that they sustained "actual damages" demonstrates a fundamental misunderstanding of the requirements of section 226.  *See* Mot. 33:22-24.  As the court noted in *Kisliuk v. ADT Security Services*, 263 F.R.D. 544 (C.D. Cal. 2008), Labor Code section 226(e) distinguishes between "injury," as the invasion of a legal right, and "actual

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S

wage statement claim must be denied.

### F. California Law Expressly Permits Restitutionary Recovery of Unpaid Wages

Wal-Mart argues that Plaintiffs' restitution claim under Cal.Bus.Prof. Code §17200 fails because only restitution of a certain quantifiable vested interest may be recovered under the statute.  California authority, however, expressly permits restitutionary recovery of unpaid overtime.  *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal.4th 163 (2000) ("An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL."); *Loehr v. Ventura County Cmty. Coll. Dist.,* 147 Cal.App.3d 1071 (1983) ("Earned but unpaid salary or wages are vested property rights."); *Lopez,* 2010 U.S. Dist. LEXIS 26072, *32-33.[20]  Thus, Wal-Mart's Motion must be denied.

### G. Plaintiffs' Waiting Time Penalty Claims Prevail

Section 203 imposes a penalty on an employer who "willfully fails to pay" wages when due. Cal. Lab. C. §203.   The term "wilful" as used in Section 203 does not mean that the refusal to pay must necessarily be based on a deliberate evil purpose to defraud wages which the employer knows to be due. *Davis v. Morris,* 37 Cal.App.2d 269 (1940).  Relying on *Amaral v. Cintas Corp. No 2*, 163 Cal.App.4th 1157 (2008), Defendant contends that waiting time penalties are improper because a good faith dispute exists as to whether wages are due.   Defendant's reliance on *Amaral,* however, is misplaced as in that case, the good faith dispute arose because the legal obligations imposed by a Living Wage Ordinance were unclear.  *Id.* at 1202.  Likewise, in *Barnhill v. Robert Saunders & Co*., 125 Cal.App.3d (1981), the court found that the employer's failure to pay wages was not willful because the

(continued…)

damages" flowing from the injury.  *Id*. at 548.  Furthermore, section 226(e) provides for statutory damages for a violation of section 226(a) even where an employee's "actual damages" are unquantifiable or nominal.  *Id*.
[20] *See also Murphy v. Kenneth Cole Productions, Inc*., 40 Cal. 4th 1094, 1120 (Cal. 2007) (recovery for violations of California's meal and rest break law is a wage).

1    state of the law with respect to the employer's legal duties was unsettled.

2        Defendant incorrectly implies that the mere fact that a legal dispute exists as

3    to whether Plaintiffs are exempt is sufficient to establish a "good faith" defense for

4    waiting time penalties under Section 203.  Good faith defenses presented which,

5    under all the circumstances, are unsupported by any evidence, are unreasonable, or

6    are presented in bad faith, will preclude a finding of a "good faith dispute."  8 Cal.

7    Code Regs. § 13250(a).   In this case, however, Wal-Mart routinely directed and

8    expected Plaintiffs to perform the non-exempt tasks and provide coverage to hourly

9    associates when they were completing training.  SGD 259, 308-312, 319-323.  In

10   addition, it restricted the labor budgets to such a degree that Plaintiffs had no choice

11   but to perform non-exempt tasks.  SGD 328, 331,332.  Moreover, a number of the

12   duties expected of Plaintiffs involved financial reports and analyses that Wal-Mart

13   never provided training on. SGD 22-25. Further, during the course of Plaintiffs'

14   employment with Wal-Mart, Defendant never attempted to advise Plaintiffs what

15   tasks were exempt and non-exempt.  SGD 38, 352.  As such, Defendant did not act

16   in good faith in classifying Plaintiffs as exempt and Plaintiffs' waiting time

17   penalties prevail.

18   **IV.   CONCLUSION**

19       In ruling on Plaintiffs' Motion for Class Certification, this Court made it

20   abundantly clear that in order to avail itself of the executive and administrative

21   exemptions, Defendant must prove how much of the work Plaintiffs' performed

22   was exempt.  Based on Defendant's failure to do so, and failure to indisputably

23   prove the remaining elements of the exemptions, Plaintiffs respectfully request that

24   the Court deny its Motion for Summary Judgment.

25   Dated: October 29, 2012                    **KHORRAMI, LLP**

26                                              ___/s/ Bevin E. Allen_____
                                                Bevin E. Allen
27                                              *Attorneys for Plaintiffs*

28

CV 04-1003 DSF (Ex)
PLAINTIFFS' OPPOSITION TO WAL-
MART'S